**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOE BISCAHA, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

OMNI HOTELS CORPORATION D/B/A OMNI HOTELS & RESORTS.,

*Defendant*.
______________________________________/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff, Joe Biscaha ("Plaintiff"), brings this action against Defendant, Omni Hotels Corporation d/b/a Omni Hotels & Resorts ("Defendant"), to secure redress for violations of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## NATURE OF THE ACTION

2. This is a class action under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

3. Defendant is a hospitality company that provides hotel and resort services to consumers, throughout the United States and the State of Florida.

4. To promote its goods and services, Defendant engages in aggressive telephonic sales call campaigns to consumers with no regards for consumers' rights under the FTSA, even after customers opt out from Defendant's messages.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of

the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (2) at least one member of the proposed class is a citizen of a state different from Defendant; and (3) the proposed class contains more than 100 members.

7. Plaintiff is a citizen of Florida. Defendant is a Texas corporation with its principal place of business in Texas. Accordingly, there is minimal diversity between Plaintiff and Defendant as required under 28 U.S.C. § 1332(d)(2).

8. The Court has personal jurisdiction over Defendant because Defendant sent telemarketing text messages to Plaintiff within this District.

9. Venue is proper in this District because the acts that give rise to Plaintiff's claims, including but not limited to Defendant's sending of text messages to Plaintiff, occurred within this District.

**PARTIES**

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

11. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 2295 (the "2295 Number") that received Defendant's text message solicitations.

12. Defendant is a Texas corporation whose principal place of business is at 4001 Maple Avenue, Suite 500, Dallas, TX 75219-3241.

13. Defendant directs, markets, and provides its business activities throughout United States and the State of Florida.

14. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

**FACTS**

15. Beginning at least in February 2023, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's number 2295, from telephone number 63935.

16. Plaintiff received messages on the following dates, including but not limited to those sent on February 21, 2023, April 13, 2023, and September 12, 2024, as shown below:




17. On or about September 12, 2024, Plaintiff responded with the message "stop" to Defendant's 63935 telephone number, using clear and unambiguous opt-out language to opt out of any further text message communications with Defendant, as shown below:




18. This same day, following Plaintiff's clear opt-out request, Defendant responded with a confirmation message stating: "you have unsubscribed from Omni Hotels Offers & Alerts and will receive no further messages. (…)" (as shown above).

19. Despite Plaintiff's unequivocal opt-out request and Defendant's confirmation, Defendant continued sending unwanted messages to Plaintiff's 2295 Number, on February 13, 2026, from Defendant's 63935 number, as shown above.

20. Defendant has the capability of immediately complying with Plaintiff's opt-out request.

21. Defendant sent Plaintiff telephone calls more than 15 (fifteen) days after Plaintiff's first "stop" request.

22. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

23. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant "stop", but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

24. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

25. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's explicit opt-out instruction.

26. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

27. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain an internal do-not-call list.

28. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an explicit opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages.

29. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

30. Indeed, Plaintiff's and the Class members opt-out requests were not honored within a reasonable time from when the opt-out request was made.

31. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

32. As demonstrated by the above screenshots, Defendant's text messages constitute "telephonic sales calls" as they were intended to solicit the sale of consumer goods and/or services – in this case hotel and resort services.

33. The information contained in the text messages advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

34. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list.

35. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list.

36. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the FTSA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

37. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

38. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages after opting out.

39. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on at least September 12, 2024, when Plaintiff responded to Defendant with "stop".

40. Plaintiff is the subscriber and sole user of the 2295 Number and is financially responsible for it.

41. Plaintiff's 2295 Number is his residential number which he uses for personal purposes.

42. The text messages originated from at least telephone number 63935, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

43. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members inbound opt-out requests.

44. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

45. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

46. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

47. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

48. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

49. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

50. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

51. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

52. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

53. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

54. Compliance with the FTSA will not result in Defendant having to cease its business operations.

55. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

56. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

57. Plaintiff and the Class members revoked any consent they may have provided Defendant to text message them by responding with “stop” opt-out instructions.

58. Defendant’s unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant’s text messages also inconvenienced Plaintiff and caused disruption to his daily life.

59. Defendant’s unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant’s unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

60. Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant’s unwanted text messages. In all, Defendant’s violations of the FTSA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant’s solicitations.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

61. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

62. Plaintiff brings this case on behalf of the following “Class” defined as follows:

> **FTSA Stop Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages or calls, from Defendant, regarding Defendant’s goods or services, to said person’s cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages or calls by replying to the messages or calls with a “stop” or similar opt-out instruction.**

63. Defendant and its employees or agents are excluded from the Class.

64. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

65. Also excluded from the Class are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

**NUMEROSITY**

66. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

67. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

**COMMON QUESTIONS OF LAW AND FACT**

68. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a) Whether Defendant initiated telephone solicitations to Plaintiff and the Class members;

b) Whether Defendant violated Fla. Stat. § 501.059;

c) Whether Defendant adhered to requests by Class members to stop sending text messages to their telephone numbers;

d) Whether Defendant keeps records of text recipients who revoked consent to receive texts;

e) Whether Defendant has any written policies for maintaining an internal do not call list;

f) Whether Defendant's conduct was knowing and willful; and

g) Whether Defendant is liable for damages, and the amount of such damages.

69. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephone solicitations and telemarketing messages to consumers after they had requested to be opted out is proven, Plaintiff and the Class members will have identical FTSA claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

70. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

71. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

72. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the

Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

73. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

**COUNT I**
**Violation of FLA. STAT. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA Stop Class)**

74. Plaintiff re-alleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

75. In pertinent part, the FTSA provides that a telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission made by or on behalf of the seller whose goods or services are being offered. Fla. Stat. § 501.059(5).

76. The FTSA defines a "telephone solicitor" as a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including but not limited to calls made by use of automated dialing or recorded message devices. Fla. Stat. § 501.059(1)(i).

77. Defendant is a telephone solicitor under the FTSA because it made or caused to be made telephonic sales calls, including text messages and telephone calls, to promote its hotel and resort services in Florida.

78. Plaintiff and the FTSA Stop Class members are consumers who received one or more outbound telephone calls or text messages regarding Defendant's goods or services more than fifteen (15) days after they communicated to Defendant that they did not wish to receive such communications made by or on behalf of Defendant via the word "Stop".

79. Plaintiff communicated to Defendant on September 12, 2024 that he did not wish to receive further communications by responding "stop" to Defendant's telemarketing messages.

80. Defendant failed to honor Plaintiff's and the FTSA Stop Class members' opt-out requests and continued to initiate outbound telephone calls or text messages made by or on behalf of Defendant regarding Defendant's goods or services.

81. As a result of Defendant's conduct, Plaintiff and the FTSA Stop Class members were harmed and are entitled to statutory damages of at least $500.00 for each violation, injunctive relief against future violations, and, to the extent Defendant's violations are determined to be knowing or willful, treble damages as provided by Fla. Stat. § 501.059(10).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class as applicable under the FTSA;

c) An order declaring that Defendant's actions, set out above, violate the FTSA;

d) An injunction requiring Defendant to cease all telephonic sales calls and text messages prohibited by the FTSA, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages as alleged herein.

Dated: May 22, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher E. Berman, Esq.
Florida Bar # 1010654
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com

20900 NE 30th Ave., Suite 417
Aventura, FL 33180

*Counsel for Plaintiff and the Class.*